J-S47038-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.L.S., A MINOR | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.S., FATHER | : | No. 613 MDA 2019 |

Appeal from the Decree Entered March 20, 2019
in the Court of Common Pleas of York County
Orphans' Court at No(s): 2018-0192(a)

| | | |
|---|---|---|
| IN RE: ADOPTION OF: I.R.S., A MINOR | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.S., FATHER | : | No. 614 MDA 2019 |

Appeal from the Decree Entered March 20, 2019
in the Court of Common Pleas of York County
Orphans' Court at No(s): 2018-0193a

| | | |
|---|---|---|
| IN RE: ADOPTION OF: H.A.S., A MINOR | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.S., FATHER | : | No. 615 MDA 2019 |

Appeal from the Decree Entered March 21, 2019
in the Court of Common Pleas of York County
Orphans' Court at No(s): 2018-0194(a)

BEFORE:  DUBOW, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:              **FILED NOVEMBER 15, 2019**

A.S. ("Father") appeals from the Decrees entered on March 20, 2019,[1] granting the Petitions filed by the York County Office of Children, Youth and Families ("CYF" or the "Agency"), seeking to terminate Father's parental rights to his minor female children, A.L.S. (born in May 2012), and I.R.S. (born in July 2014), and his male child, H.A.S. (born in April 2016) (collectively, "the Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b).[2]  We affirm.

In its Opinion pursuant to Pa.R.A.P. 1925(a), the trial court set forth the factual background and procedural history of this appeal, which we adopt herein.  *See* Trial Court Opinion, 5/13/19, at 1-9.

Relevantly, on July 26, 2017, CYF filed dependency Petitions as to the Children pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6301, *et seq*.  On August 9, 2017, the trial court held an adjudicatory hearing, and determined that the Children were dependent under the definitions of "dependent child" set forth at 42 Pa.C.S.A. § 6302(1) and (3).  Father and the Children's maternal grandparents, C.W. and R.W. ("Maternal Grandparents"), were present at the

_____

[1] Regarding the Decree involuntarily terminating Father's parental rights to H.A.S., we observe that the date stamp on the Decree indicates that the document was received by the clerk of courts on March 20, 2019.  However, the Decree was docketed on March 21, 2019.

[2] We note that, after a hearing on April 12, 2019, the trial court confirmed the consents to adoption filed by K.W., the Children's mother ("Mother").  **See** N.T., 3/20/19, at 5-8; and N.T., 4/12/19, at 4-11.  Mother has not filed a brief in this appeal, nor has she filed an appeal of her own.

adjudicatory hearing. Mother was not present at the adjudicatory hearing. The Children were residing with Maternal Grandparents in kinship placement, and remained in that placement. In the permanency review Order entered on July 3, 2018, the trial court ordered Father to maintain safe, stable, and appropriate housing, and to maintain a stable and lawful income to support the Children. Additionally, the trial court ordered Father to cooperate with Justice Works Youth Care to work towards accomplishing the goals of the family service plan. Mother, Father, and Maternal Grandparents retained medical and educational rights over the Children.

A series of permanency review hearings and Orders followed, with the Children remaining in kinship care with Maternal Grandparents. The Order entered after the October 2, 2018 permanency review and dispositional hearing changed the permanency goal for the Children from reunification to adoption. The Children remained in kinship placement with Maternal Grandparents.

On December 11, 2018, CYF filed Petitions seeking to involuntary terminate Father's parental rights to the Children.

At the time of the next permanency review hearing on December 27, 2018, both Father and Mother were incarcerated at the York County Prison. Mother was not present at the hearing. Father's incarceration was based on charges connected with an incident in November 2018, in which he was accused of threatening an individual with a gun, followed by a stand-off, and

then a police chase. Father was charged with fleeing police and possession of a firearm, and had a number of charges pending in both York County and Lancaster County at the time of the termination hearing.[3] In the permanency review Order entered on December 27, 2018, the trial court retained the goal of adoption, and ordered that legal and physical custody remain with CYF. The Children remained in kinship placement with Maternal Grandparents.

On March 6, 2019, the trial court held a permanency review and dispositional hearing, and entered an Order finding that Father had not complied with the permanency plan. The trial court retained the goal of adoption, and ordered that legal and physical custody remain with CYF. The Children remained in kinship placement with Maternal Grandparents.

On March 20, 2019, the trial court held an evidentiary hearing on the Petitions ("TPR hearing"). CYF presented the testimony of Father's York County Probation/Parole Officer; a drug and alcohol monitoring specialist at Families United Network; the program director at Catholic Charities Intensive Families Services, representing the family advocate who worked with the family; a reunification and permanency caseworker for CYF assigned to the family. N.T., 3/20/19, at 21, 29, 34, and 41. Father testified on his own

---

[3] The trial court admitted the criminal records relating to Father's incarceration from both York County and Lancaster County into evidence, and took judicial notice of their contents. *See* N.T., 3/20/19, at 16-18.

behalf. *Id.* at 83. The trial court examined Maternal Grandmother. *Id.* at 105. The trial court interviewed A.L.S., *in camera*, with only counsel present.[4]

At the close of the hearing, the trial court stated as follows:

THE COURT: All right. I am signing the final [D]ecree for the involuntary termination of the parental rights of Father. I won't go into a lot of detail as to why, but I do want to say two things on the record.

The first is I've had this case since it began in June of 2017. I have a file that's four to five inches thick. I have notes from every hearing[,] and my recollection of Father's life before [his] incarceration is substantially different from Father's recollection in many regards.

Secondly, I want to make it very clear that[,] when I changed the goal to adoption, it was October 2nd of 2018[,] and that was a month-and-a-half before [F]ather was incarcerated. I make much of this on the record to make it clear that adoption was the proper goal for these children before Father was

---

[4] We observe that the trial court appointed Barbara Orsburn Stump, Esquire ("Attorney Stump"), to represent the Children's legal interests, and Katherine Louise Doucette, Esquire ("Attorney Doucette"), as the Children's guardian *ad litem* ("GAL"). *See In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017) (plurality) (requiring the appointment of separate legal counsel to represent the legal interest of a child involved in a contested involuntary termination proceeding). Attorney Doucette stated that I.R.S. wished to be adopted, as did A.L.S., and that H.S., who was only two years old, had not indicated a preference. N.T., 3/20/19, at 8; *see also In re T.S.*, 192 A.3d 1080, 1092 (Pa. 2018) (holding that the trial court did not err in allowing the children's GAL to act as their sole representative during the termination proceeding, because, at two and three years old, they were incapable of expressing a preferred outcome). Attorney Stump stated that the female children had indicated similarly, with I.R.S. stating that Maternal Grandparents were her preference for permanency, and that Attorney Stump did not use the word "adoption" in the discussion with I.R.S. N.T., 3/20/19, at 8-9. A.L.S., who was seven years old at the time of the hearing, testified that she wished to live permanently with Maternal Grandparents, and that she and her siblings were doing well and liked living with Maternal Grandparents. *Id.* at 12-15.

incarcerated[,] for a whole lot of reasons that are set forth in that Order and from that hearing.

I have taken judicial notice of the fact that Father's charges are four different set[s] of charges in two different counties. They include felonies almost beyond what I could easily count. It is clear to me that Father is probably going to be in jail for at least another 5 to 10 years. It is just incomprehensible that he would obtain a not guilty verdict on four different sets of charges. It looked to me that it is going to be four different trials.

I have no doubt that the bond between these children and their grandparents is very great. I of course did talk to [A.L.S.] just a few hours ago, and she did indicate that she wanted to be adopted by her [Maternal G]randparents. I find that the bond between Father and these children is somewhat strong but leaning [sic]. The bond with the [Maternal G]randparents is waxing or increasing. I find that there will be no harm in severing the bond, or substantial harm is [sic] severing the bond between Father and the [C]hildren. It's definitely without any doubt in this court's mind in the best interest of these [C]hildren for them to be adopted, and[,] accordingly[,] for Father's parental rights to be involuntarily terminated.

N.T., 3/20/19, at 111-12.

On March 20, 2019, the trial court entered its Decrees terminating Father's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On April 18, 2019, Father timely filed separate Notices of appeal, along with separate Concise Statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), with regard to each of the Children.[5]

Father now raises two issues for our review:

---

[5] This Court, *sua sponte*, consolidated the appeals for review.

> 1. Did the [trial c]ourt err as a matter of law and/or abuse its discretion in terminating Father's parental rights[,] when the Agency failed to meet its burden that termination of parental rights was warranted under 23 Pa.C.S.[A.] [§] 2511(a)(1), (8), and 2511(b)?
>
> 2. Did the [trial c]ourt abuse its discretion in granting the Agency's request to terminate Father's parental rights?

Father's Brief at 4 (issues numbered).[6]

We will address Father's claims together, as they are related. Father claims that there was insufficient evidence to terminate his parental rights to Children. *See id.* at 13-24. Father argues that the evidence established that he had complied with the goals identified in his Family Services Plan, and was employed. *Id.* at 17-18, 20. Father also contends that, despite the trial court's conclusion that he had failed to maintain stable housing, the Agency never visited his home to determine whether it was appropriate. *Id.* at 18, 23. According to Father, he complied with the court-ordered services and conditions and, although he was unable to complete a section 5329 evaluation, he cooperated with the assigned team. *Id.* at 19. Additionally, Father asserts that he and the Children share a strong bond. *Id.* at 20-21. Father further

---

[6] Although Father stated his issues somewhat differently in his Concise Statement, we find that he preserved the issues for our review. *See Krebs v. United Refining Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal).

argues that the trial court improperly considered his pending criminal charges. *Id.* at 23-24.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> [U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (internal citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with consideration of section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will consider subsections 2511(a)(1) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

With respect to subsection 2511(a)(1), our Supreme Court has held as follows:

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988).

Further, this Court has stated,

> the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B.,N.M.*, 856 A.2d 847, 854-55 (Pa. Super. 2004) (citations omitted).

Additionally, regarding incarceration and preservation of parental rights, we have stated the following:

> [I]ncarceration of a parent does not, in itself, provide sufficient grounds for termination of parental rights; however, an incarcerated parent's responsibilities are not tolled during his incarceration. … [P]arental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his ability, even in difficult situations.

*In the Interest of C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (citations omitted). "Parental rights are not preserved by waiting for a more suitable or

convenient time to perform one's parental duties while others provide the child with his or her physical and emotional needs." ***In re K.Z.S.***, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

The focus in terminating parental rights under section 2511(a) is on the parent, but, pursuant to section 2511(b), it is on the child. ***In re Adoption of C.L.G.***, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). In ***In re E.M.***, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791.

***In re: T.S.M.***, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." ***In re Z.P.***, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances … where direct

- 11 -

observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." ***In re K.Z.S.***, 946 A.2d at 762.

> Further,
>
> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound.  If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. … Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists.  The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

***In re K.K.R.-S.***, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted).  Thus, the court may emphasize the safety needs of the child.  ***See In re K.Z.S.***, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests).  "[A] parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." ***In re B.,N.M.***, 856 A.2d at 856 (internal citations omitted).

In its Opinion, the trial court addressed Father's claim, and concluded that there was clear and convincing evidence to terminate Father's parental rights to the Children under subsections 2511(a)(1) and (b). *See* Trial Court Opinion, 5/13/19, at 14-20. After a careful review of the record, we conclude that the trial court's decision to terminate Father's parental rights is supported by competent, clear and convincing evidence in the record. *In re Adoption of S.P.*, 47 A.3d at 826-27. Thus, we find no abuse of discretion in the trial court's termination of Father's parental rights to the Children, and affirm on the basis of the trial court's Opinion. *See* Trial Court Opinion, 5/13/19, at 14-20.

Decrees affirmed.

Judge Nichols joins the memorandum.

Judge Dubow concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/15/2019